Our next case is Schlender v. Seelow. Mr. Mushi, whenever you're ready. Good morning, Your Honors. May it please the Court, Assistant City Attorney Clint Mookie on behalf of the Defendant Appellants Charles Seelow and the City of Milwaukee. The trial court aired finding genuine issues of material fact precluded decision on qualified immunity. This Court should reverse because qualified immunity is immunity from suit, not merely a defense to liability. If this case were to proceed to trial without genuine issues of material fact, then the defendants would be irreparably harmed. The video evidence firmly settles the historic facts in terms of who was involved, what happened in the order of events. And based upon the trial court's findings, case law dictates that qualified immunity applies. The trial court's findings and conclusions are inconsistent. The trial court found that the plaintiff was intoxicated and disorderly, that probable cause to seize her existed, that she immediately physically resisted efforts to control her for approximately a minute, and that she was moving away from the officer and out of his control again prior to the takedown. The trial court also found that— There are two separate instances of—or allegations of excessive force. And so maybe it'd be most helpful to take each part and separate those before the takedown. So maybe start with—we've called it different things in the briefings. I don't know if the proper term is pain compliance or if it's arm—so what term we're going to use to describe the first? Certainly, Your Honor. And what I will characterize the first hold as with the court's acquiescence is as an escort hold. Okay. As I alluded to moments ago, the trial court correctly found that Ms. Schlender was intoxicated and disorderly, that there was probable cause to seize her, and that she immediately physically resisted his efforts to control her for approximately a minute. At that point, he employed the escort hold, taking hold of her left arm behind her back and began leading her from the casino floor. Throughout the briefing in this case— I don't know what—watching the videos, I don't know what that's—what this case is about, okay? I mean, this is a pretty vicious takedown of a woman that probably weighs 110 pounds. And I'd just like you to point to me where I should watch—I watched that video several times—where in that video can I find undisputed evidence that she was resisting at the time he took her to the ground? Once again, I think that the trial court's findings itself indicate that at minimum, there was mild resistance immediately prior to the takedown. We're not talking about either one of those instances, either when he pulled his hand out to stop her. We're not talking about when he initially grabbed her to say, you got to come with me. Neither one of those are we talking about. Nor am I, Your Honor. And if I can clarify, the trial court found that immediately prior to the takedown— There was an escort hold happening. There was an escort hold happening. Ms. Schlender stopped her feet, turned around, and began moving in the opposite direction in which she had been escorted. And then the takedown occurred. The trial court also noted that a heeled boot traveled towards Officer Silo just immediately prior to the takedown. I appreciate that the video does not clearly depict her heeled boot striking Officer Silo Shin. However, it is not necessary to find qualified immunity to determine whether or not that because case law teaches that the standard is objective. And the question is whether or not Officer Silo reasonably could have interpreted her conduct under the circumstances as resistance. But the problem is, don't—I mean, for you—don't we have to accept the facts in the light most favorable to the plaintiff and then decide whether there's a dispute. And without a dispute—or if there is a dispute, we don't have jurisdiction to hear the appeal. It's true that you have to accept the facts in the light most favorable to Ms. Schlender, but you have to apply those facts in the context of an objective standard that asks whether or not Officer Silo's interpretation of that conduct reasonably could be of resistance. But I guess what I'm asking is, if we can't see from the videos what's happening at the time of the takedown, okay—I mean, you know, what I'm—I guess it may be that your client is entitled to qualified immunity after a determination of the facts. In other words, we've said before that there has to be a trial because the jury has to decide the facts. The judge can give special interrogatories. And if the plaintiff is resisting at the time of the takedown, then your client is likely entitled to qualified immunity. But I think the law requires us to look at the videos and only can we decide this case is if there's undisputed evidence that she was, in fact, resisting at the time of the takedown. Again, I do think that the—that even if Officer Silo misconstrued her conduct as resistance or misjudged the amount of force necessary, that qualified immunity applies. And I think— But wouldn't we have to agree with you based on the video? Because if she—if there was no video and she says, I was not resisting at the time of the takedown, and he said, I construed your conduct to be resisting. Unless they agreed on what that conduct was, she gets a trial. Am I right on that? I—I'm—I'm not sure that—that I agree that you are. Again, because the standard is— Where do we get the facts from? Right. I think the question presented on the issue of qualified immunity as opposed to the merits— But she's—but the judge found she couldn't answer the question of qualified immunity because there were factual disputes. So Judge Kirsch and I are both asking, then where do we get the facts to be able to answer the qualified immunity question as a matter of law? The—the factual disputes identified by the trial court below are—are based on Ms. Schlender's statements as to her subjective intent to—to not resist. But wait a minute— And that's irrelevant to the objective question. Can I—can I ask you a question? I—I didn't—I didn't take it that way. I—I understood that Ms. Schlender was saying she was not resisting. She was not kicking back at the time of the takedown. I think we're—we're—we're—we're having some trouble here is if she had agreed, if—if both your client and she had agreed that she kicked back or swung back at the time of the takedown, then we would have no disputed facts. And then the question would be whether or not the officer could objectively believe that she was resisting based on the agreed upon facts. But I think here she's saying she was not swinging back. She was not resisting at the time of the takedown. And therefore, the jury, I think, has to determine whether she was. And, I mean, I just tell you, I can't see it in the video. And—and I appreciate that. But I—I—again, I think that the trial court itself found that her heel boot was, in fact, swinging back. I—I believe the trial court noted in its decision that—that a heeled boot can be seen traveling back towards the officer just prior to the takedown. But at that moment, the district court says the vantage point is not clear. Right. It's not clear. And therefore, she could not draw—she could not draw any conclusions about whether there was a kick and if there was a kick, whether it was an intentional or unintentional, et cetera, et cetera. Well, again, the—the distinction that—that I make in your honor, and I appreciate the question, is—is that I—I think there's a distinction to be drawn between whether or not the video depicts the boot striking Officer Celo. But the court clearly found that you can see the boot traveling towards Officer Celo. And I would suggest that this case is controlled by this court's decision in Johnson v. Rogers, which was a 2019 case, which has three key holdings for this court. The first is that the reasonableness of force depends on the nature of the force employed and not the extent of the injuries. The second is that video evidence may be clear enough— I think it'd be helpful if we—let's take a look at the opinion that you were drawing us to. Yes. And you said there was a factual finding by the district court that she was kicking before. I wanted to make sure I was able to locate that. I'm looking at 1617. 1617. I—I'm—I'm sorry, Your Honor, I'm not—I'm not sure where you're—you're directing me, but my recollection of— Oh, do you have the order? I—I do over at table. I did not bring it up here. I—again, I—I believe that within the court's order, there is a recitation of a series of facts, including the fact that the court sees what appears to be a boot traveling towards Officer Cee-Lo Shin. And what I'm suggesting to this court is that in so much as the question raised by the qualified immunity question, as opposed to the merits question, is whether or not Officer Cee-Lo reasonably could have perceived Ms. Schlender's conduct as resistance. And I would suggest that based on the court's finding that Ms. Schlender stopped her feet, turned, began moving away from the direction in which Officer Cee-Lo was leading her, and then the video depicts her foot traveling backwards towards Officer Cee-Lo that— But there's no finding of that. When I—when I'm looking here at the district court's order that I do have in front of me, I have the disputed facts. And one of those is whether or not Cee-Lo testified that the mule kicked his left chin and he had to conduct a takedown maneuver. The judge found that the plaintiff denies kicking Officer Cee-Lo. These disputes existed. And when it comes up again on page 18, she doesn't assign an actor to the movement of the heel. In other words, she says again at the bottom of 18, again, while the video footage appears to show a heeled foot move backwards, the vantage point is not clear. In other words, she doesn't say the video shows Ms. Schlender kicked Officer Cee-Lo. She says the video appears to show a heeled foot move backwards, but the vantage point is not clear. Once again, I agree with all of that. And I would furthermore assert that if the video clearly showed the heeled foot striking Officer Cee-Lo, Officer Cee-Lo would be entitled to summary judgment on the merits. However, in light of the factual findings that the court did make, including the fact that the video shows a heeled foot traveling towards Officer Cee-Lo, even though we cannot see the moment of connection, there is enough depicted in the video consistent with this court's finding in the Johnson case where similarly the precise moment of contact was not depicted, but the video was nonetheless clear enough for a court to find that the officer's belief that resistance was evident and therefore qualified immunity existed for the leg sweep takedown that occurred in Johnson. I believe we have an analogous situation here. That is essentially appellant's fault. I have a different question. Does the fact that Ms. Schlender was not under arrest, does that impact our analysis in any way? I'm thinking about our case Dawson v. Brown, which instructs that when determining the reasonableness of an officer's actions, we should consider whether the individual was under arrest and suspected of committing a crime. I appreciate the question, Your Honor, and I will candidly acknowledge that I'm not prepared to discuss Dawson specifically. However, what I would suggest to this court is that the trial court found, and there is no dispute, that Ms. Schlender had been seized and was in custody at that time. And so I think whether or not she was formally under arrest would have bearing on whether or not she could be charged with the crime of resisting arrest. But in so much as she had been seized and was in the midst of being relocated within the custody of the officer, that nonetheless she could resist, which could then lead to a situation where escalating force was justified in response to continued resistance. With that, I see that I've begun to run into my rebuttal time, and so unless there are any additional questions at this time, I'll reserve the remainder. Okay, thank you, Mr. McKeon. Ms. Weck. Hi, good morning. This appeal must fail because it necessarily, as you've pointed out in opening argument, on resolving a disputed fact in favor of the defendant. Defendant appellant reframing the issue as that it doesn't matter what Officer Celo perceived the foot movement being because an officer is entitled to subdue a resisting arrestee ignores the reality of what the officer at issue actually testified occurred. So we agree that it's objective. It's an objective standard. I do agree that it's an objective standard. However, it's an objective standard judged from the perspective of a reasonable officer on the scene. There's no better objective officer on the scene than the officer that was on the scene. His testimony was very clear. Ms. Schlender was not under arrest. She was intoxicated, yes, but he was escorting her, quote, for her safety. Is there a factual dispute here that decides this question? That decides the question of qualified immunity? It decides the question of excessive force. Yes. So do we have jurisdiction to hear this case? I do not believe that this appellate court does at this point, and I did have that in my briefing because, as stated, to find in favor of the appellant defendant, this court must accept Officer Celo's, it's not even his version of events because his testimony belies what's in the briefing, but they have to accept the defendant appellant's version of events that Ms. Schlender. What are the facts that remain unclear to answer the excessive force question? So there's the three different, or at least in our opinion, three different points of contact. The initial grabbing of Ms. Schlender, which we initially argued, and I do disagree, but the court found that the initial seizing was constitutional. Then there was the first escalation by Officer Celo where he took her from a regular escort hold, which may or may not have been appropriate under the circumstances of safely escorting an intoxicated woman through a hallway, into pain compliance. Then, so there's one disputed fact on whether or not she was resisting enough to warrant pain compliance. She was nonviolent. There was no risk of a weapon. She wasn't going to flee and harm somebody. So the first escalation, that's a disputed fact still. Before you move to the third and then the second, the second slash third, did the district court make a qualified immunity holding on that second category, the pain compliance, the escalation to the pain compliance? No, Your Honor. I do not believe that the district court did. Was she unable to answer whether or not she was resisting? So the district court didn't address that specific issue exactly. She does a fairly detailed analysis of what she can view in the video versus what the competing testimony is between the parties. And what she found was you can see Ms. Schlender looking over her shoulder. You can see movement. You can see at some point she plants her feet. And I understand that the panel has reviewed the video, so I think you know what I'm talking about. There's an initial plant when Officer Celo originally says stop or whatever he says to her before seizing her initially. Then there's the pain compliance hold where you can see she's turning back. There's competing testimony. She says, please stop. You're hurting me. I will walk. I just want to go home. Doesn't the district court have to decide qualified immunity on that? In other words, if we remanded the case with respect to the takedown, doesn't the district court have to decide what are the issues that are going to be presented to the jury? Yeah. And that would include a qualified immunity determination. In other words, you may not be able to argue to the jury that the initial arm bar and the escalation of pain that the defendant was not entitled to qualified immunity for that. So I think the district court was fairly clear that she denied the defendant's motion for qualified immunity or protection for underqualified immunity and that it was going to be up to a jury to make these factual determinations. And then the court would bring up whether or not qualified immunity then attaches. But I guess I get I understand that. But the problem is, I think the district court found that your client was resisting. And the video is pretty clear that your client didn't want to leave the casino and was resisting when Officer Celo took hold of her arm. So I believe what the district court was referring to is really that initial seizure, the very first initial seizure. And you can see on the video, Officer Celo puts his arms up. He immediately takes hold of Ms. Slender's arm and her demeanor changes. The problem is that she began to walk past him. And that's when Officer Celo grabs her arm. So he tells her to stop. She begins to walk past him. And then Officer Celo grabs her. So it's a very fluid. The video is fairly quick. And it's a millisecond. Findings of the district court. That's what I'm asking. I do believe that the district court made a finding that, well, that's why she found that the initial seizure was constitutional, in her opinion. Then that initial first stop seize. But what I'm concerned about here on today's appeal is the second and third escalation. If it's constitutional to grab an individual who's not committing a crime under this theory that she was being unruly, that may be an appellate issue down the road. But for today, we're focusing on the fact that after the initial seizure, after he has her in custody, he has control of her. The video is clear. He has her arms the entire time throughout their contact after that initial seizure. There's some mild movement with her arms behind her back, which is consistent with her testimony that she was turning back and saying, please let me go. You're hurting me. This is painful. I will walk. Let me go. The second. So the third incident, the second escalation, I should say, when we're referring to this, this kick, the heel boot moving backwards. It is undisputed that Officer Celo would not have used his decentralizing technique, the takedown, but for Schlender, Miss Schlender, mule kicking him. The comment in the decision about that you can see a heel boot moving backward. It's not clear if her boot was flying backwards because Officer Celo rocked her backwards and slammed her to the ground. You can see during the video that at one point, although the district court found the vantage point is not clear, Officer Celo has her lifted off the ground with his feet firmly planted on the ground. So it's extremely possible that a jury could find, you know, he precipitated the takedown himself. An officer cannot escalate a situation, cause a response, and then reap the benefit of qualified immunity. You make much of the fact that Officer Celo did not intend to arrest Miss Schlender until after he perceived that she kicked him or attempted to kick him. How does that affect our analysis? Are you saying that, you know, there's a difference here in our analysis between a detainee and arrestee? I do, Your Honor, in a slight variation of the facts. Officer Celo never placed Miss Schlender under arrest. So at no point was it his intent to arrest her, even after he took her down. He testified that some other officers came on the scene and took over and eventually placed Miss Schlender under arrest under allegations of assaulting the police officer, namely as a result of the kick. To address your question specifically, though, I think that it is a distinction, especially when we're looking at this through the lens of excessive force and what type of force is necessary under the circumstances. I think the factors in Graham v. Conner on the totality of circumstances, the fact that she was not only not an arrestee, but she was not a dangerous detainee. She was an intoxicated woman in a casino that simply needed help getting to a safe ride home. There was no perceived threat of weapons, nothing like that. I think that there is a big distinction here. I really, you know, I don't know if I have much more to say other than very clear to me that today the Court of Appeals does not have the jurisdiction over Miss Schlender. There is no jurisdiction to decide the issue that the defendant appellants need you to decide to rule in their favor. There are factual disputes. Without a resolution of those factual disputes as to what happened, qualified immunity is simply not right to determine. You know, it is notable the district court did not foreclose it indefinitely. She merely said, look, the video is not clear, despite what defendant appellants reiterate over and over. It's not clear. It's not conclusive. There's competing testimony. Officer Celo's own testimony is that but for a mule kick, he would not have been, he would not have taken her down. This is not some hindsight of 2020 where they thought someone had a gun in the distance or something like that. He says, I decentralized her because she kicked me. Miss Schlender says that did not happen. He escalated the situation on his own, and that is what resulted in the takedown. He can't reap the benefit of that. So if the court doesn't have further questions, I'm not sure I need to waste too much more time belaboring the issues because I think it's a fairly straightforward issue for today. Okay, thank you, Miss Wick. Mr. Mucci. Thank you once again, Your Honors, and I will be relatively brief. Two years after the facts of this case, this very court announced in 2019 that there has never been a clearly established rule prohibiting a takedown to end mild resistance. Last term in Pam v. City of Evanston, this court said that unless no reasonable officer could have thought the conduct was lawful, then courts must extend qualified immunity. If this case proceeds to trial, defendants will be irreparably harmed. I would suggest that the disputes of fact identified by the trial court go to the merits question only. I would further submit that, frankly, neither Miss Schlender's characterization of the video nor Officer Silo's recollections and testimony years later ultimately matter to the qualified immunity determination because the video speaks for itself and the trial court did note at least mild resistance was evident. Thank you. Thank you, Mr. Mucci. Thank you to both counsel and we'll take the case under advisement.